**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
_____
                               )
KELLI FLEMING, on behalf of    )
themselves and all others so   )
similarly situated, et al.,    )
                               )
                  Plaintiffs,  )      Civil Action
                               )      No. 21-12092-PBS
v.                             )
                               )
SELECT PORTFOLIO SERVICING,    )
et al.,                        )
                               )
                  Defendants.  )
_____)
```

**MEMORANDUM AND ORDER**

November 22, 2022

Saris, D.J.

**INTRODUCTION**

In this proposed class action, Plaintiffs assert that Select Portfolio Servicing ("SPS") and eight separate trusts wrongfully foreclosed on their residential properties by sending pre-foreclosure form letters that fail to comply with the terms of their mortgages in violation of Mass. Gen. Laws ch. 183, § 21. Plaintiffs also assert a claim of breach of the duty of good faith and reasonable diligence (Count II) but do not press class certification on that theory. After a hearing, the Court **DENIES** Plaintiffs' motion for class certification (Dkt. 35).

<u>**FACTUAL BACKGROUND**</u>

The following facts are drawn from the Amended Complaint.

**[Dkt. 14.]**

I.   <u>**The Parties**</u>

Plaintiffs seek to represent the following proposed class:

<u>The Unlawful Foreclosure Class</u>:
(i) Massachusetts residents;

(ii) Whose Massachusetts properties were foreclosed on pursuant to mortgages that contained the following or a materially similar paragraph: "22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence";

(iii) Who, prior to foreclosure, were sent notices by Select Portfolio Servicing pursuant to said paragraph entitled "90 Day Right to Cure" or "150-Day Right to Cure", that failed to state that the mortgagor had a "right to reinstate the mortgage after acceleration" and/or a "right to bring a court action;"

> (iv) Who were sent separately dated untitled letters that stated that the mortgagor had a "right to reinstate the mortgage after acceleration and commencement of foreclosure proceedings."

Dkt. 35, at 3-4.

SPS is a residential mortgage servicing company with a principal place of business in Salt Lake City, Utah. Deutsche Bank National Trust Company, U.S. Bank NA, U.S. Bank, U.S. Bank National Association, and Wilmington Trust, NA, in their various forms, are trustees of securitized mortgaged-backed trusts, with principal places of businesses in Santa Ana, California; Cincinnati, Ohio; and Wilmington, Delaware, respectively.

## II.  **The Notices**

Between January 9, 2016 and June 29, 2017, SPS sent to Plaintiffs — all Massachusetts residents — a form default/right to cure notice purportedly complying with Paragraph 22 of their mortgages. These notices did not inform the plaintiffs of their "right to reinstate the mortgage after acceleration" and their "right to bring a court action." Dkt. 14 ¶ 113. On the same day, SPS also sent to each representative plaintiff an "Untitled Letter", without headings, that stated each mortgagee had a "right to reinstate after acceleration and commencement of foreclosure proceedings" and that they had a "right to bring a court action." Id. ¶ 114. Plaintiffs allege that the use of

"and" in these untitled letters is misleading, because it suggested to homeowners that they needed to wait until the commencement of foreclosure proceedings to contest the default or reinstate their mortgages. Such a failure to strictly comply with Paragraph 22, they argue, would render these accelerations, foreclosures, and sales unauthorized. Plaintiffs allege that the violation caused considerable damages, including loss in the value of their homes and foreclosure costs and fees. They do not seek to void the title of third-party purchasers.

Defendants deny that the notices are faulty and have filed affirmative defenses and counterclaims to set off and recoup the deficiency balances owed on the mortgages after foreclosure.

**DISCUSSION**

**Class Certification**

    **I.   Legal Standards**

A class may be certified pursuant to Rule 23 of the Federal Rules of Civil Procedure only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to these four prerequisites, the class must also satisfy at least one requirement of Rule 23(b). <u>See</u> <u>Smilow</u> <u>v. Sw. Bell Mobile Sys., Inc.</u>, 323 F.3d 32, 38 (1st Cir. 2003).

Rule 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The considerations relevant to these findings include:

    (A)  the class members' interests in individually controlling the prosecution or defense of separate actions;

    (B)  the extent and nature of any litigation concerning the controversy already begun by or against class members;

    (C)  the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

    (D)  the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D).[1]

Finally, the First Circuit adds an extra-textual ascertainability requirement to the class certification analysis. "[T]he definition of the class must be 'definite,' that is, the standards must allow the class members to be

---

[1] Plaintiffs urge the court to certify an issue class as permitted by Rule 23(c)(4), contending that they have met the nine factors developed by the Third Circuit to weigh "appropriateness." <u>See</u> Dkt. 44 at 9. This was not adequately briefed, and the Court does not address it now.

ascertainable." In re Nexium Antitrust Litig., 777 F.3d 9, 19 (1st Cir. 2015).

"A party seeking class certification must affirmatively demonstrate his compliance with [Rule 23] - that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (emphasis in original). Certification is proper only if the Court is satisfied, "after a rigorous analysis," that the Rule 23 prerequisites have been satisfied. Gen. Tel. Co. of the Sw. v. Falcon, 457 U.S. 147, 161 (1982).

**II.  Analysis**

SPS contests certification of the proposed class on the grounds of commonality, typicality, adequacy, predominance, and superiority.[2] Plaintiffs, in turn, argue that all Rule 23 requirements have been satisfied.

*1.   Numerosity*

Numerosity is a "low threshold." Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of

---

[2]  SPS does not dispute the class's ascertainability.

Rule 23(a) has been met." Id. (quoting Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001)).

Plaintiffs contend that the proposed class is sufficiently numerous, encompassing hundreds of individual former Massachusetts homeowners as identified by publicly available Land Court records. At the time of hearing, Plaintiffs provided the Court with 40 recent foreclosures conducted by SPS in which the forms used were seemingly identical to those of the named plaintiffs. SPS does not challenge numerosity. The Court finds that the numerosity requirement has been met.

> 2.  *Commonality*

Rule 23(a) requires that the proposed class share a common question of law or fact. Fed. R. Civ. P. 23(a)(2). "Rule 23(a)'s requirement of commonality is a low bar, and courts have generally given it a 'permissive application.'" In re New Motor Vehicles Canadian Exp. Antitrust Litig., 522 F.3d 6, 19 (1st Cir. 2008)(citation omitted). Commonality demands only the existence of a "single issue common to all members of the class." Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l., Ltd., 247 F.R.D. 253, 264 (D. Mass. 2008) (emphasis in original).

Plaintiffs define a class with plenty in common: class members share a common servicer (SPS), are Massachusetts residents, and received "hybrid" notices during the same time

period. Moreover, standardized patterns of practice generally satisfy the commonality test. See In re First Commodity Corp. of Bos. Customer Accounts Litig., 119 F.R.D. 301, 309-10 (D. Mass. 1987).

The question of law here is common, specifically, whether the acceleration default notices complied strictly with the terms of their mortgages pursuant to Mass. Gen. Laws ch. 183, § 21. Challenges to form documents are often found to present common questions in class actions. See, e.g., Sacred Hearth Health Sys., Inc. V. Humana Military Healthcare Serv., Inc., 601 F.3d 1159, 1171 (11th Cir. 2010). The Court finds this requirement met.

### 3.   Typicality

Typicality requires that the class representative's "injuries arise from the same events or course of conduct as do the injuries of the class," but his claims need not be "identical to those of absent class members." In re Credit Suisse-AOL Sec. Litig., 253 F.R.D. 17, 23 (D. Mass. 2008). The touchstone is "whether the putative class representative can fairly and adequately pursue the interests of the absent class members without being sidetracked by her own particular concerns." Id. (quoting Swack v. Credit Suisse First Bos., 230 F.R.D. 250, 264 (D. Mass 2005)).

SPS argues that the Plaintiffs' claims will require numerous fact-specific determinations, particularly as to recoupment counterclaims, which would provide sufficient distraction deleterious to absent class members. However, as the representative Plaintiffs point to the same course of conduct and legal theory, they have met the burden of typicality on the claims even if the counterclaims of recoupment are not identical. The Court finds this requirement satisfied.

    *4.   Adequacy*

The First Circuit has articulated two requirements for adequacy: (1) "that the interests of the representative party will not conflict with the interests of any of the class members," and (2) "that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).

Again, Plaintiffs maintain that given the similarity of claims between representative Plaintiffs and putative class members, there is no potential for conflicting interests or competing claims. SPS does not counter directly, instead focusing on Plaintiff counsel's lack of experience in class actions. Given that Plaintiff counsel is a subject matter expert in the underlying foreclosure issues, i.e., twelve years working in litigating wrongful foreclosure cases, along with his

contractual advisory relationship with a class-action expert, the Court finds that adequacy is met. See, e.g., Wells v. Allstate Ins. Col, 210 F.R.D. 1,12 (D.D.C. 2002) (finding class counsel met the adequacy requirement in their first class action, based on their experience in the field, along with association with a class action counsel).

     *5.   Predominance and Superiority*

"The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016) (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997)). The inquiry boils down to "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Id. (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49 (5th ed. 2012)). If so, a class may be certified under Rule 23(b)(3) even though "other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Id. (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 (3d ed. 2005)). In conjunction, superiority means that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

SPS argues that the plaintiffs do not satisfy the predominance requirement for three main reasons: (1) their claims require individualized analyses, particularly as to deficiency and recoupment; (2) they have not proposed a viable class-wide damages model; and (3) they did not experience injuries-in-fact for which the Court can provide relief.

As a general matter, this Court has recognized that the need for individual damage determinations do not alone defeat predominance. DaSilva v. Border Transfer of MA, Inc., 296 F. Supp. 3d 389, 406 (D. Mass. 2017); Garcia v. E.J. Amusements of New Hampshire, Inc., 98 F. Supp. 3d 277, 291 (D. Mass. 2015). However, SPS argues that an individual damages issue would preclude certification under Comcast Corp. v. Behrend, 569 U.S. 27, 34-35 (2013). In Comcast, the Supreme Court held that "under the proper standard for evaluating certification," class plaintiffs must establish that "damages are capable of measurement on a classwide basis." Id. at 34. Rule 23(b)(3) predominance requires an inquiry as to whether, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." Id.

The problem here is that the question of individual damages indeed overwhelms any common question of law. The Court finds that individual damage issues defeat class certification relief because a fair market value analysis is inherently an

individualized analysis. See Tarrify Props., LLC v. Cuyahoga Cty., Ohio, 37 F.4th 1101, 1106-07 (6th Cir. 2022) ("[A] court must conduct an individualized, fact-intensive, and adversarial process to determine the fair market value for each property.") To determine fair market value, the Court would have to assess each absent members' property, and "valuation of real property depends on many circumstances, including the size, location, use, and condition of the property and the relevant market conditions." Id. Individualized damage hearings would likely swamp the litigation. Accordingly, common issues would not predominate. Similarly, the Court is not convinced that class certification would be a superior method.

Arguably, the class might be able to establish a methodology based on costs and fees. SPS notes, however, that Plaintiffs never "actually paid any of the foreclosure costs and fees" claimed as common damages. Dkt. 52 at 8. Plaintiffs acknowledged that individual damages may require some individualized proof such as "current and historical fair market value," but argue in conclusory fashion that "evidence of loss of equity can ultimately be evaluated by formula" Dkt. 36 at 16. Maybe so, but the proof of market value is a complicated matter which must be evaluated home by home. In short, the damages sought after by Plaintiffs for the value of loss of property, use and occupancy value, moving costs, rents, costs, and

expenses to live elsewhere, cancellation costs and fees, *all* require individualized analyses that make a class action not the superior method for fairly or efficiently adjudicating the controversy.

**ORDER**

The Court **DENIES** the plaintiffs' motion for class certification (Dkt. 35).


/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge